# UNITED STATES DISTRICT COURT
# EASTRN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA *ex rel.*

DAVID JESSE GEBOY

Plaintiff-Relator,

v.

KINEX MEDICAL COMPANY, LLC,

Defendant.

.

Case No.:

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(B)(2)**

**JURY TRIAL DEMANDED**

**DOCUMENT TO BE KEPT UNDER SEAL**

---

## FALSE CLAIMS ACT COMPLAINT

---

Plaintiff-Relator, by his attorneys, Hansen Reynolds LLC, files this *Qui Tam* Complaint on behalf of the United States of America against the Defendant, Kinex Medical Company, LLC ("Defendant"), pursuant to the False Claims Act, 31 U.S.C. §§ 3729, *et seq.* for knowingly submitting or causing the submission of false claims for payment to the United States of America. Plaintiff-Relator also brings this action on behalf of himself to obtain a Relator share of the damages to the United States. And as for their allegations against Defendant, Relator states as follows:

### NATURE OF THE ACTION

1.    This is a civil action brought under the provisions of the False Claims Act, 31 U.S.C. §§ 3729-3733, by Relator David Jesse Geboy ("Relator"), against Kinex Medical Company, LLC ("Defendant").

2.     Relator brings this action on behalf of the United States Government, having firsthand knowledge of Defendant's fraudulent activities through his professional involvement in the health care industry.

3.     This action seeks damages and civil penalties for the submission of false claims to the United States Government, specifically fraudulent claims made to the Medicare program and other government funded health insurance programs.

## PARTIES

4.      Relator David Jesse Geboy is an adult citizen of Wisconsin and has been employed in various capacities within the health care sector, where he has observed and gathered evidence of the fraudulent practices described herein.

5.     Defendant Kinex Medical Company, LLC is a limited liability company organized and existing under the laws of Wisconsin with its principal place of business in 1801 Airport Road, Suite D, Waukesha, WI 53188.

6.     Defendant is engaged in the business of manufacturing and selling medical devices used post-surgery.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C § 1331 and 31 U.S.C. § 3732(a), which provides for federal question jurisdiction over actions involving alleged violations of the federal False Claims Act.

8.     Venue is also proper in this District under 31 U.S.C. § 3732(a) because Defendant "is found" and "transacts business" in this District.

2

## FALSE CLAIMS ACT

9.    Congress enacted the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 - 3733, during the Civil War to enhance the ability of the United States to recover losses it sustained as a result of fraud.

10.    In years since, Congress has amended the FCA to strengthen and enhance the government's ability to stop fraud and to recoup its losses.

11.    Realizing that dishonest contractors are unlikely to report on themselves, Congress, instead, encouraged whistleblowers to come forward and disclose secrets unknown to the Government through *Qui tam* litigation.

12.    In an FCA *qui tam* lawsuit, whistleblowers (or "Relators") create a private/public partnership to obtain recovery for false claims submitted to the Government. *See generally, False Claims Act Amendments: Hearings before the Subcomm. Of Admin. Law and Gov't Relations of the Comm. On the Judiciary,* 99th Cong. 48 (1986).

13.    Under Section 31 U.S.C. 3729, the FCA subjects a person to liability who:

(A) Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(B) Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(C) Conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);

(G) Knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids decreases an obligation to pay or transmit money or property to the Government.

14.    Under 31 U.S.C. § 3729 (b)(1), the "terms 'knowing' and 'knowingly:'"

A. Means that a person, with respect to information –

(i)  Has actual knowledge of the information;

(ii) Acts in deliberate ignorance of the truth or falsity of the information; or

(iii)Acts in reckless disregard of the truth or falsity of the information; and;

B.  Require no proof of specific intent to defraud.

15.     For civil penalties assessed after December 13, 2021, for associated violations occurred after November 2, 2015, the civil monetary penalties are between $11,803 and $23,607 per violation. 28 C.F.R. § 85.5.

**Medicare Program for Payment of Claims for Medical Devices following Surgery**

16.     Pursuant to the Medicare program and other government healthcare programs described below, the government pays claims for certain medical services, including claims for medical devices and pain management services following surgery, for persons age 65 and older, and for persons with disabilities. 42 U.S.C. § 1395k.

17.     Medicare pays health care providers for the reasonable costs of providing covered health services to Medicare beneficiaries. 42 U.S.C. § 1395x(v)(1)(A).

18.     Critical to the continued solvency and viability of Medicare and other Government health programs is that healthcare providers bill only for services that are actually performed, that are "reasonable," and that are *medically necessary*. 42 U.S.C. § 1395x(v)(1)(A) (emphasis added).

19.     The United States Department of Health and Human Services ("HHS") is responsible for the administration and supervision of the Medicare program.

20.     Durable medical equipment (DME) is covered under Medicare Part B if a Medicare-enrolled doctor or other health care provider prescribes it for use in a patient's home if the DME are: (i) safe and effective; and (ii) *medically necessary*.  42 CFR § 410.38 (emphasis added).

21. The Medicare claims process begins when a patient visits a doctor and receives services.

22. After providing the service, the doctor submits his or her own bill (also known as a claim) to Medicare detailing the services provided, diagnosis codes, and any relevant medical codes.

23. The doctor may also prescribe other items for the patient to use for in-home care such as a knee brace or a sling, which is filled through a medical equipment supplier.

24. The supplier, in turn, fills the prescription, submits a "Certificate of Medical Necessity" ("CMN") to Medicare, and bills the patient his or her remaining balance.

25. If approved, Medicare pays the claim.

26. After a patient meets the Medicare Part B deductible, the patient pays 20% of the Medicare-Approved Amount for the prescribed DME.

### Certificate of Medical Necessity

27. Fraudulent DME practices have been an ongoing issue for decades.

28. The problem has historically stemmed from DME suppliers distributing pre-completed CMNs.

29. Congress halted this practice in 1990.

30. "The Omnibus Budget Reconciliation Act of 1990 prohibited suppliers from distributing completed or partially completed certificates of medical necessity [CMN's] to physicians or Medicare beneficiaries." Cong. Rec. Sen., Mar. 5, 1993, pg. 4325.

31. The amendments were designed to modify the "[then]-current prohibition by permitting suppliers to complete the administrative parts of the form, such as names, addresses,

and product codes. Suppliers completing this information ***must also include the price to make certain that the physician is aware of the Item's cost***."

32.     Thus, reforms were proposed by The Medicare Beneficiary Payment Protection Act of 1993, which was introduced in the Senate S.B. 515.

33.     These proposals "followed a year's worth of investigations and hearings conducted by both the Senate Special Committee on Aging and the Senate Budget Committee into the practices of unethical suppliers who have taken advantage of weaknesses in the system to bleed millions of dollars from the Medicare program." Cong. Rec. Sen., Mar. 5, 1993, pg. 4325.

34.     The proposals from The Medicare Beneficiary Payment Protection Act were ultimately incorporated into the Social Security Act Amendments of 1994, PL 103–432 (HR 5252)("1994 Amendments").

35.     The 1994 Amendments authorized medical equipment suppliers to create and distribute a partially completed CMN for the convenience of doctors. 42 U.S.C. § 1834m(j)(2).

36.     Recognizing the opportunity for chicanery, Congress also highly regulated the content of the partially completed CMN.

37.     42 U.S.C.§ 1834j(2)(A)(i) states:

> a supplier of medical equipment and supplies may distribute to physicians, or to individuals entitled to benefits under this part, a certificate of medical necessity for commercial purposes **which contains no more than the following information** completed by the supplier:
>
> (I) An identification of the supplier and the beneficiary to whom such medical equipment and supplies are furnished.
>
> (II) A description of such medical equipment and supplies.
>
> (III) Any product code identifying such medical equipment and supplies.
>
> (IV) Any other administrative information (other than information relating to the beneficiary's medical condition) identified by the Secretary.

6

38.     Further, 42 U.S.C.§ 1834j(2)(A)(ii) states:

> If a supplier distributes a certificate of medical necessity containing any of the information permitted to be supplied under clause (i), **the supplier shall also list on the certificate of medical necessity the fee schedule amount and the supplier's charge for the medical equipment** or supplies being furnished prior to distribution of such certificate to the physician.

39.     Violation of this section carries stiff statutory penalties.

40.     Pursuant to 42 U.S.C. §§ 1834j(2)(A)(iii):

> Any supplier of medical equipment and supplies who knowingly and willfully distributes a certificate of medical necessity in violation of clause (i) or fails to provide the information required under clause (ii) is subject to a civil money penalty in an amount not to exceed **$1,000 for each such certificate of medical necessity so distributed**….

41.     Notably, this penalty applies to each nonconforming Certificate distributed, not merely each order filled.

42.     Throughout the years, unscrupulous DME providers have begun circulating confusing "order forms" to trick doctors into prescribing unnecessary (but billable) DME.

43.     This serves as a de facto end-around of the requirements of the 1994 Amendments.

### "Fragmenting" and Medicare Fraud.

44.     Unscrupulous providers have come up with underhanded ways to evade Medicare's cost-saving protections.

45.     One popular method is called "fragmenting."

46.     Fragmenting occurs when a DME supplier bundles components in the orders of a DME that would be covered by Medicare, but the DME itself is not.

47.     After the doctor places the order, the supplier of the DME *unbundles* the unnecessary B&S (braces and slings) device and separately bills Medicare and the patient for the two components.

7

48.     Unbundling the DME into its components for the purpose of getting a Medicare claim paid is a recognized example of fraud.  DME MAC Jurisdiction B Supplier Manual, pg. 4.

49.     As an illustration, the Supplier Manual warns that "billing for parts of an ostomy bag" is an example of "fragmenting" and is described by the Supplier Manual as an example of "fraud and abuse."  DME MAC Jurisdiction B Supplier Manual, pg. 4.

### Coverage of Braces and Slings Versus Cold Therapy Devices Under Medicare

50.     Braces and slings (B&S) are considered medically necessary and are covered by Medicare.

51.     In contrast, cold therapy devices (CTD), such as an ice machine, are considered "premium" items and therefore not covered by Medicare.

52.     A provider that offers both B&S and CTD could only bill Medicare for the B&S device and only when a doctor determines that the B&S device is medically necessary.

53.     A provider can never lawfully submit a bill for CTD.

54.     If a DME includes components of both B&S and CTD, a provider is not permitted to "unbundle" the DME into its constituent parts.

55.     This is fragmenting as described above.

### FACTS

### Kinex

56.     Kinex is an orthopedic specialty medical equipment company facilitating the delivery and billing of durable medical equipment and orthotics for acute, post-acute and in-home rehabilitation following injury or surgery.

57.     According to their website, Kinex "support[s] patients with product delivery, fitting, and education while handling the billing, collections and payer and patient follow-up."

58. Kinex represents that they "monitor patient success and convey meaningful progress updates to physicians, healthcare systems and insurance providers upon request or at mutually agreed upon times."

59. Popular products include ThermoComp Cold Therapy™, ice machines with circulating wraps, and simple clinic slings.

**Relator and Joints in Motion**

60. Relator is employed by Joints in Motion Medical, LLC (JIM) as a Regional Manager.

61. Relator has been employed by JIM for 17 years.

62. JIM is a provider of CPM (Continuous Passive Motion) devices and exclusive orthopedic rehab technologies.

63. JIM is a competitor of Defendant, however, circumstances lead to Relator servicing clients of both JIM and Defendant.

64. As such, Relator is uniquely positioned to observe Defendant's billing practices related to medical device sales.

**Defendant's Fraudulent Scheme**

65. Over the course of several years, Relator has observed suspicious activities by Defendant aimed at defrauding Medicare. These observations are based on direct evidence from Defendant, its agents, and additional evidence collected by others at the direction of Relator.

66. Defendant sells both B&S and CTD.

67. Despite the non-coverage of CTDs by Medicare, they are frequently prescribed post-surgery for pain management and swelling reduction, and are medically useful in the eyes of treating physicians but not recognized as medically *necessary* by Medicare.

9

68.     On the other hand, certain B&S devices, for example the Abduction Hip Brace, knee brace orthotics, and arm positioning shoulder braces, are covered by Medicare but are not typically part of a post-surgery treatment plan.

69.     Defendant supplies both covered B&S devices and uncovered CTDs.

### Kinex Forms Used to Perpetrate Fraud

70.     Relator has collected Kinex Standard Written Orders, Certificates of Medical Necessity, and physician order sets created by Kinex with add-on orthotic codes in paper prescription form or built within the clinic's electronic medical record.

71.     Kinex uses these forms to perpetrate fraud.

72.     Kinex has distributed thousands, if not tens of thousands, annually over the last six years with a standard written order that looks the same or similar to this ("Kinex CMN") (See Ex. 1):



73.     If treated as an unlawful CMN, the Kinex Order Form violates the Act in two significant ways.

74.     First, Kinex did not "list on the certificate of medical necessity the fee schedule amount and the supplier's charge for the medical equipment or supplies being furnished prior to distribution of such certificate to the physician" as required by 42 U.S.C.§ 1834j(2)(A)(ii).

75.     The supplier's charges must appear on every CMN in which **<u>any</u>** of the following information permitted by 42 U.S.C.§ 1834j(2)(A)(i) appears:

> (I) An identification of the supplier and the beneficiary to whom such medical equipment and supplies are furnished.
>
> (II) A description of such medical equipment and supplies.
>
> (III) Any product code identifying such medical equipment and supplies.
>
> (IV) Any other administrative information (other than information relating to the beneficiary's medical condition) identified by the Secretary.

76.     The Kinex CMN contains all of that information but does **<u>not</u>** disclose charges as required by 42 U.S.C.§ 1834j(2)(A)(ii).

77.     Indeed, it is not even clear whether doctors were ever presented with the charges they were committing patients to pay.

78.     Second, and perhaps, more problematic, if the Kinex Order Form operates as an illegal CMN, it violates 42 U.S.C.§ 1834j(2)(A)(i) because it contains **<u>more</u>** information than permissible.

79.     Specifically, it contains products and codes for **<u>uncovered DME devices</u>**.

80.     The following is an electronic Kinex Medical Company Order Form that it issues to clinics through the electronic medical record (the "Kinex Electronic Form"). (See Ex. 2)



81.     The Kinex Electronic Form violates the Act in the same manner as the Kinex CMN described above because Kinex did not "list the fee schedule amount and the supplier's charge for the medical equipment or supplies being furnished prior to distribution of such certificate to the physician." 42 U.S.C. § 1834j(2)(A)(ii).

82.     Additionally, the Kinex Electronic Form violates 42 U.S.C. § 1834j(2)(A)(i) because it contains **more** information than permissible by containing products and codes for **uncovered DME devices**.

### How Kinex Uses These Forms to Perpetrate Fraud

83.     Kinex's scheme works in the following manner.

84.     Kinex distributes the Kinex CMN to doctors prescribing post-surgery treatment.

85.     The doctors see the Kinex CMN and check or select a box for a cold therapy device; this product is listed **In Bold Type Font Along With its UNCOVERED BILLING CODE** and includes an unneeded B&S device and its Billing Code.

86.     When doctors attempt to prescribe a CTD, it automatically comes bundled with a B&S device that the patients do not need and is not medically necessary.

87.     The prescribing doctor is never given the option to order a CTD by itself.

88.     To order a CTD, the doctor is given no choice but to order a CTD and B&S combination.

89.     After the doctor places an order, however, Kinex then *unbundles* the unnecessary B&S device and separately bills Medicare and the patient for the two components.

90.     Kinex then bills Medicare for the **medically unnecessary** B&S device---i.e. the component that was not part of the treatment plan.

91.     And, Kinex bills the senior citizen patients for the **uncovered** CTD.

92.     At the end of the fraud, the patient pays for the CTD that his or her doctor ordered as part of the treatment plan and Medicare pays for a B&S device that was never needed, desired, nor medically necessary.

93.     These patients receive a B&S device that is not part of their treatment plan and often do not store them for future events.

94.     At a later date, when a patient *does* need a B&S device, they are informed that Medicare records show they had already received one and are no longer eligible.

95.     Defendant's fraudulent actions are not isolated incidents but part of a widespread and systemic scheme to defraud Medicare, leading to significant financial losses to the United States Government and affecting numerous Medicare recipients.

96.     Defendant's actions have not only caused direct financial harm to the Medicare program but also compromised the integrity of medical treatment and patient care.

97.     If the Kinex Order Forms were treated as illegal CMNs (which they effectively are) these Order Forms would violate the requirements of the 1994 Amendments in two important ways.

98.     First, Kinex's Order Forms do not contain pricing, as clearly required by the 1994 Amendments.

99.     Second, Kinex's Order Forms contains "extra information"—*i.e.*, uncovered products and billing codes.

### Covered Products Versus Uncovered Products

100.     Based on the evidence collected by Relator, Defendant defrauds Medicare by billing for at least the following medically unnecessary covered products when the medical providers believe they are ordering a different, uncovered product.

101.     **Hip Brace**

| Abduction Hip Brace that was billed to Medicare: | Uncovered product that Medical Provider believes to be ordering: |
|---|---|
|  |   |
| - Product Covered By Medicare<br>- Not Medically Necessary<br>- Medical Provider does not know ordering this product.<br>- Fraudulently concealed by Defendant. | Ice machine with circulating wrap that MD felt was necessary for assisting with reducing post-surgical pain and swelling. |

(Image 1)

102. **Knee Brace**

| Knee brace that was provided and billed to Medicare along with non-covered ice machine:<br><br><br><br>- Product Covered By Medicare<br>- Not Medically Necessary<br>- Medical Provider does not know ordering this product.<br>- Fraudulently concealed by Defendant. | Uncovered product that Medical Provider believes to be ordering:<br><br><br>.<br><br>Comparable Ice machine with circulating wrap that MD felt was necessary for assisting with reducing postsurgical pain and swelling |
|---|---|

(Image 2)

103. **Shoulder Brace**

| Arm positioning Shoulder brace that was billed to Medicare:<br><br><br><br>- Product Covered By Medicare<br>- Not Medically Necessary<br>- Medical Provider does not know ordering this product.<br>- Fraudulently concealed by Defendant. | Uncovered product that Medical Provider believes ordering:<br><br><br><br>Simple clinic sling that MD felt was necessary for proper support/healing |
|---|---|

(Image 3)



Simple sling is medically necessary **but is not covered.**



Motion restriction component is covered **but is not medically necessary.**

The sling portion is medically necessary **but is not covered.**



Sling portion only is medically necessary **but is not covered.**

Motion restriction component is covered **but is not medically necessary.**

Sling portion only is medically necessary **but is not covered.**

Motion restriction component is covered **but is not medically necessary.**

Sling portion only is medically necessary **but is not covered.**

104. **Shoulder Brace**

| Arm positioning shoulder brace that was billed to Medicaid L3960 | Simple sling product that medical provider believes ordering: |
|---|---|
|  |  |
| - Product Covered By Medicare<br>- Not Medically Necessary<br>- Medical Provider does not know ordering this product.<br>- Fraudulently concealed by Defendant. | -Abduction pillow sling that medical provider felt was necessary for proper support and healing.<br>-Covered by Medicare but reimbursement for substantially less than arm positioning shoulder brace. |

(Image 4)

105. **Shoulder Orthotic**




Shoulder Orthotic that was billed to Medicaid L3660

Shoulder wrap required for circulating cold compression unit. No stabilization orthotic required for use

| | |
|---|---|
| - Product Covered By Medicare<br>- Not Medically Necessary<br>- Medical Provider does not know ordering this product.<br>- Fraudulently concealed by Defendant.<br>- Defendant bills a shoulder orthotic L3660 | -Simple shoulder wrap that medical provider believes to be ordering.<br>-Medical provider believes the simple shoulder wrap is necessary for proper support and healing. |

(Image 5)

106. **Range of Motion Knee Brace**



| | |
|---|---|
| - Product Covered By Medicare<br>- Not Medically Necessary<br>- Medical Provider does not know ordering this product.<br>- Fraudulently concealed by Defendant.<br>- Defendant bills for the ROM brace | - Cold therapy device and circulating wrap that medical provider believes to be ordering.<br>-Medical provider believes the wrap and cold therapy device is necessary for proper support and healing. |

(Image 6)

Cold therapy wrap without orthotic hinges is what doctor believes to be ordering. It is medically necessary **but is not covered.**





Wrap without orthotic hinges is what physician believes to be ordering. It is medically necessary **but is not covered.**

Wrap with orthotic hinges is covered, **but is not medically necessary.**

## Specific Instances of Fraud

107.     Over the years, Relator has collected evidence of fraud from Defendant's patients that were made available to him through his interactions with these patients. For example, at times, Kinex and JIM will share patients. Relator will meet with and discuss products with the patient. It is during these times that he has witnessed and uncovered Defendant's fraudulent actions.

108.     Relator has collected evidence of Defendant's fraudulent actions from over fifteen patients. He has observed rampant fraud and has worked towards collecting evidence. The following patient summaries contain descriptions and evidence of Defendant's fraudulent actions.

## Patient 1

109.     Patient 1 was prescribed a CTD following surgery in 2019.

110.     Ordinarily, a CTD would not be covered by Medicare.

111.     Kinex, however, engineers its order forms such that the doctor had no practicable choice to order a standalone CTD without a B&S device pre-bundled by Kinex.

112.     Patient 1's CTD was prebundled with a range of motion knee brace orthotic DME device.

113.     After the doctor placed the order, Kinex then fragmented the order and billed Medicare for the (covered, but medically unnecessary) knee brace orthotic

114.     Patient 1 never even received the components of the brace qualifying it as a covered range of motion device.

115.     Patient 1 emailed Kinex regarding the missing components. (See Ex. 3)

116.     In response, Kinex misrepresented what the covered range of motion DME device contained. (See Ex. 4)

117.     Kinex stated that "[t]he L1833 Don Joy wrap that is used in conjunction with the cold unit..its the wrap/cold pad. The description (sic) does have the word brace in it but it is considered a wrap."

118.     This is not true and encapsulates the fraudulent scheme.

119.     The hinges of the brace are the portion that qualify it as a covered DME device.

120.     Kinex billed Medicare and never provided the covered DME device to Patient 1.

121.     The ice machine with circulating wrap was brought to the surgery and applied immediately post operation.

122.     Therefore, the knee brace orthotic was not medically necessary and should not have been billed to insurance. Kinex knew this but billed the covered DME device in order to defraud Medicare.

123.     The following are approximate figures of the relevant costs based on Defendant's fraud:

   a.     Medicare's cost on knee brace orthotic: $810.46

   b.     Coinsurance to patient for knee brace orthotic: $162.09

   c.     Cost for the Cold Therapy unit with circulating wrap that the MD thought they ordered: $0 (a non-reimbursable item) Patient had to pay $200.00 towards the cost of the cold therapy device and coinsurance of other products billed to insurance.

   d.     HCPCS Billing code for knee brace orthotic L1833/Billing code for the cold therapy device E0218

   e.     For picture, see Image 2.

i. Knee brace that was provided and billed to insurance along with non-covered ice machine// versus comparable ice machine with circulating wrap that MD felt was necessary for assisting with reducing postsurgical pain and swelling.

124. Relator collected the following evidence of Defendant's fraud relating to Patient 1:

a. Email correspondence between Kinex and Patient discussing whether she truly received a knee brace orthotic or not. (See Ex. 3 and Ex. 4)

**Patient 2**

125. Patient 2 underwent hip surgery in September 2023.

126. The medical provider is of the belief that they ordered an ice machine with circulating wrap that the medical provider believes is medically necessary to assist the patient in reducing post-operative pain and swelling.

127. In addition to the ice machine with circulating wrap, Kinex billed for an abduction hip brace (see Image 1).

128. An abduction hip brace is used following a variety of hip repairs/joint replacements to prevent abduction and remain in position for appropriate healing following the procedure. The abduction hip brace traditionally includes a malleable and range of motion-controlled metal strut that aligns laterally with the femur and connects to the patient's waist and thigh to maintain the hip in this position.

129. Kinex instructed Patient 2 to use the ice machine only.

130. Kinex verbally instructed Patient 2 to discard the hip brace and did not provide instructions for its use.

131. Therefore, the hip brace was not medically necessary and should not have been billed to Medicare.

132. Kinex billed Medicare for the hip brace.

133. Kinex only billed for the hip brace to increase the sale amount.

134. Kinex defrauded Medicare.

135. Medicare does not reimburse for the cost of the cold therapy ice machine.

136. The following are approximate figures of the relevant costs based on Defendant's fraud:

    a. Medicare paid on hip brace orthotic: $1,102.52

    b. Coinsurance to patient for hip brace orthotic: $220.50

    c. Medicare cost for the Cold Therapy unit with circulating wrap that the MD thought they ordered: $0 (a non-reimbursable item).

    d. Patient had to pay $75.00 towards the cost of the cold therapy device.

    e. HCPCS Billing code for hip brace L1686/Billing code for the cold therapy device E0218

    f. For picture, see Image 1.

        i. Abduction Hip brace that was billed to Medicare versus Ice machine with circulating wrap that MD felt was necessary for assisting with reducing post-surgical pain and swelling.

137. Relator collected the following evidence of Defendant's fraud relating to Patient 2:

    a. Certificate of Medical Necessity (CMN)/Physician's prescription for "Post op Hip Brace and Cold Device". (See Ex. 5)

    b. Standard Written Order – Order Date: 9/15/23; date of surgery 9/29/23

i. Contains no pricing information and includes both covered and non-covered equipment. (See Ex. 5)

c. Plan of Care discussing use of the Cold Device and mention of the orthotic to be used with cold therapy, yet the patient was verbally told that the brace was not needed. (See Ex. 6)

d. Delivery ticket from Kinex Medical showing a cold device with cold pad and hip brace was delivered. No pricing is listed. (See Ex. 7)

e. Email from Patient with Relator explaining that the brace was never used and the rep instructed her that it was not needed. (See Ex. 8)

f. Medicare same/similar history showing proof that the hip brace orthotic was billed and paid by Medicare even though it was never used. (See Ex. 9)

**<u>Patient 3</u>**

138. Patient 3 underwent shoulder surgery in September 2023.

139. Kinex billed on behalf of Patient 3 a specific "airplane" or "gun-slinger" shoulder brace.

140. This type of brace is used following a variety of shoulder repairs to isolate the shoulder in a particular position for appropriate healing following the procedure. The "airplane" shoulder brace includes a malleable metal strut that attaches to the sling and the patient's waist to achieve these specific positions.

141. The physician was of the belief that they ordered a simple and inexpensive clinic sling that was necessary for proper support/healing (see Image 3).

142. The simple sling does not get reimbursed by insurance.

143.    Kinex instructed Patient 3 to leave the metal positioning strut at home because it was not necessary thereby rendering the positioning strut not medically necessary to bill for that device.

144.    Patient 3 arrived for surgery with only the sling portion of the orthotic "airplane" shoulder brace and it was applied by the physician or physician's assistant at the closing of the surgery.

145.    Patient 3 was instructed to wear the sling for several weeks until the repair was healed.

146.    Kinex billed Medicare for the arm positioning shoulder brace knowing that the covered DME device was not medically necessary.

147.    Therefore, Kinex defrauded Medicare.

148.    The following are approximate figures of the relevant costs based on Defendant's fraud:

    a.    List price billed to Medicare: $1,222.59

    b.    Medicare paid: $425.79

    c.    Coinsurance to patient: $85.16

    d.    Medicare cost for the sling that the MD thought they ordered: $0 (a non-reimbursable item)

    e.    HCPCS Billing code L3960

    f.    For picture, see Image 3.

        i.    Arm positioning shoulder brace that was billed to Medicare/Simple clinic sling that MD felt was necessary for the proper support/healing

149.    Relator collected the following evidence of Defendant's fraud relating to Patient 3:

    a.    Explanation of Benefits from insurance showing what was paid for the shoulder brace that was never used along with an ice machine that was denied. (See Ex. 10)

**<u>Patient 4</u>**

150.    Patient 4 underwent shoulder surgery in December 2023.

151.    Kinex billed the arm positioning shoulder brace for Patient 4.

152.    In this circumstance, instead of instructing Patient 4 to discard the malleable metal strut, Kinex did not even provide that portion of the DME to Patient 4.

153.    Kinex provided only the sling portion of the unique shoulder positioning brace to Patient 4.

154.    Patient 4 arrived for surgery with only the sling portion of the orthotic and it was applied by the physician or physician's assistant at the close of the surgery.

155.    Patient 4 was instructed to wear the sling for several weeks until the repair was healed.

156.    Kinex, therefore, billed for a covered product that was not medically necessary.

157.    Medicare does not reimburse the simple, inexpensive clinic sling.

158.    Kinex defrauded Medicare by billing for the covered product when it was not medically necessary.

159.    The following are approximate figures of the relevant costs based on Defendant's fraud:

    a.    List price billed to Medicare: $1,222.59

    b.    Insurance paid: $1,114.49

     c.      Cost for the sling that the MD thought they ordered: $0 (a non-reimbursable item)

     d.      HCPCS Billing code: L3960

     e.      For picture, see Image 3.

          i.      Arm positioning shoulder brace that was billed to Medicare/versus simple clinic sling that MD felt was necessary for proper support/healing.

160.    Relator collected the following evidence of Defendant's fraud relating to Patient 4:

     a.      Certificate of Medical Necessity (CMN)/Physician's prescription for "Shoulder Abduction sling". (See Ex. 11)

     b.      Delivery Ticket from Kinex Medical showing that only an accessory kit to the shoulder sling was delivered. No pricing is listed and the billing code is not consistent with what was billed to insurance. (See Ex. 12)

     c.      Bill from Kinex. (See Ex. 13)

     d.      Explanation of Benefits from insurance showing what was paid for the shoulder brace that was never used. (See Ex. 14)

**Patient 5**

161.    Patient 5 underwent shoulder surgery in September 2024.

162.    Kinex provided a unique shoulder positioning brace as well as an accessory pillow kit for Patient 5.

163.    This model of shoulder brace includes a malleable metal strut that attaches to the sling and the patient's waist to achieve these specific positions.

164. Patient 5 was never fit with the positioning strut and it was left at home prior to surgery.

165. Patient 5 arrived for surgery with only the sling portion of the DME device and the accessory pillow.

166. The Physician Assistant verified that she applied the pillow sling at the closing of the surgery.

167. The Physician Assistant never saw nor applied the strut portion of the shoulder brace which warrants the higher billing code.

168. Patient was instructed to wear the pillow sling for several weeks until the repair was healed.

169. Therefore, the arm positioning shoulder brace was not medically necessary.

170. Despite knowing this, Kinex billed Medicare for the substantially higher priced DME device.

171. Therefore, Kinex defrauded Medicare.

172. The following are approximate figures of the relevant costs based on Defendant's fraud:

    a.    List price billed to Medicaid: $1,222.59

    b.    Insurance paid: $TBD the Medicaid Allowable is $395.42

    c.    Medicaid allowable for the sling that the MD thought they ordered and applied to patient: $77.28

    d.    HCPCS Billing Code L3960

    e.    For picture, see Image 4.

i.      Arm positioning Shoulder brace that was billed to Medicaid L3960/versus Abduction pillow sling that MD felt was necessary for proper support/healing L3670

173.      Relator collected the following evidence of Defendant's fraud relating to Patient 5:

a.      Original Certificate of Medical Necessity (CMN)/Physician's prescription for "Ultra Sling" which is a Shoulder Abduction sling (L3670). (See Ex. 15)

b.      Standard Written Order from Kinex Medical showing that both a Shoulder Brace L3960 and a Pillow accessory kit to the shoulder sling (A9900 non covered item). This was an order request sent to the MD by Kinex for a signature so they can update the order to include the shoulder brace product that was not used by the MD. (See Ex. 16)

c.      Text message thread from Lauren Guhl PA-C that applied abduction pillow sling after surgery. Physician Assistant states that they never order the strut brace. Kinex pushes this through to defraud Medicare without the knowledge of medical providers. (See Ex. 17)

**Patient 6**

174.      Patient 6 underwent shoulder surgery in December 2022.

175.      Kinex provided the unique shoulder positioning brace with the malleable metal strut that attaches to the sling and the patient's waist to achieve these specific positions for Patient 6.

176.      Kinex told Patient 6 that the aluminum positioning strut was not necessary for use and was left in the original product packaging.

177.  <u>Thus, Kinex had actual knowledge that the</u> aluminum positioning strut was not medically necessary and had an obligation to deliver the appropriate DME to avoid overbilling Medicare.

178.  Patient 6 arrived for surgery with only the sling portion of the orthotic and it was applied by the medical provider at the closing of the surgery.

179.  Patient 6 was instructed to wear the sling portion of the orthotic for several weeks until the repair was healed.

180.  Kinex billed insurance for this DME.

181.  Kinex, therefore, ordered a covered product that was not medically necessary.

182.  Insurance does not reimburse the simple, inexpensive clinic sling.

183.  Kinex defrauded insurance by billing for the covered DME device when it is not medically necessary.

184.  The following are approximate figures of the relevant costs based on Defendant's fraud:

      a.     List price billed to insurance: $1,222.59

      b.     Patient paid: $505.17 for the shoulder brace since their deductible was not met.

      c.     Cost for the sling that the MD thought they ordered: $0 (a non-reimbursable item)

      d.     HCPCS Billing code: L3960

      e.     For picture, see Image 3.

i.      Arm positioning Shoulder brace that was billed to insurance/patient // versus Simple clinic sling that MD felt was necessary for proper support/healing

185.    Relator collected the following evidence of Defendant's fraud relating to Patient 6:

a.      Certificate of Medical Necessity (CMN) / Physician's prescription for "shoulder abduction sling". (See Ex. 18)

b.      Bill from Kinex to patient showing that the L3960 Airplane Splint was billed to insurance. (See Ex. 19)

c.      Explanation of Benefits from insurance showing what was paid/owed for the shoulder brace that was never used. (See Ex. 20)

**Patient 7**

186.    Patient 7 underwent shoulder surgery in 2015.

187.    Kinex provided a shoulder orthotic DME device that had an accessory added as a shoulder stabilization orthotic for Patient 7.

188.    Patient 7 was provided with a cold/compression device with the added shoulder stabilization orthotic accessory.

189.    In this circumstance, the physician believes that he ordered the circulating cold wrap required to operate with the cold/compression device.

190.    Kinex then fragmented the order, billing Medicare only for the medically unnecessary shoulder stabilizer.

191.    Patient 7 was never fit with the shoulder stabilization orthotic and it was left at home prior to surgery.

192.    The covered DME device, therefore, is not medically necessary.

193.    The following are approximate figures of the relevant costs based on Defendant's fraud:

      a.    List price billed to Medicaid: $107.00

      b.    Medicare allowable: $110.65

      c.    Medicaid cost for the cold/compression Therapy unit with circulating wrap that the MD thought they ordered: $0 as a non-covered item. Patient billed $150 for cost of non-covered items.

      d.    For picture, see Image 4.

          i.    Shoulder orthotic that was billed to Medicaid // versus Shoulder wrap required for circulating cold compression unit. No stabilization orthotic required for use.

194.    Relator collected the following evidence of Defendant's fraud relating to Patient 7:

      a.    Kinex delivery paperwork outlining all of the products provided to the patient. (See Ex. 21)

**Patient 8**

195.    Patient 8 underwent knee surgery in August 2023.

196.    Kinex provided Patient 8 a knee brace orthotic that attaches with Velcro to a cold therapy wrap. A knee brace in the category of this billing code is traditionally used following a variety of knee repairs to add stability and control range of motion for appropriate healing following the procedure. It has range of motion controlled hinges on both sides of the knee joint. The brace typically extends from the groin to the ankle to properly control range of motion and support the leg and knee joint.

197.    The physician believes they are ordering a simple brace that comes as an accessory to this cold device wrap. This simple brace is merely a neoprene sleeve that holds the circulating wrap and the hinges are about 1/3 of the length of the traditional post-op style range of motion knee brace.

198.    The physician was of the belief that he ordered an ice machine to assist the patient in reducing post-operative pain and swelling but his order set also has the post op brace L1833 code listed.

199.    Kinex instructed Patient 8 on using the ice machine only.

200.    Kinex informed Patient 8 that the brace component was not needed for the ice machine to function.

201.    Patient 8 was never given any instruction on using the covered orthotic knee brace itself, but was shown how to use the ice machine without the knee brace hinges.

202.    The ice machine with circulating wrap was sent to surgery and applied immediately post-op.

203.    The hinges that qualify the product as a covered DME device are easily removable and were left at home totally unused in the original packaging.

204.    Since the brace was not used at all, it is no longer considered medically necessary to bill for the code that describes that product. The knee orthotic therefore does not meet medical necessity nor should be eligible to bill insurance.

205.    Kinex billed Medicare for the medically unnecessary DME device.

206.    Therefore, Kinex defrauded Medicare.

207.    The following are approximate figures of the relevant costs based on Defendant's fraud:

a. Medicare's Cost on knee brace orthotic: $810.46

b. Coinsurance to patient for knee brace orthotic: $162.09

c. Cost for the Cold Therapy unit with circulating wrap that the MD thought they ordered: $0 (a non-reimbursable item) Patient had to pay $200.00 towards the cost of the cold therapy device and coinsurance of other products billed to insurance.

d. HCPCS Billing code for knee brace orthotic L1833 / Billing code for the cold therapy device E0218

e. For picture, see Image 2.

   i. Knee brace that was provided and billed to insurance along with non-covered ice machine// versus comparable ice machine with circulating wrap that MD felt was necessary for assisting with reducing postsurgical pain and swelling.

208. Relator collected the following evidence of Defendant's fraud relating to Patient 8:

a. Delivery ticket from Kinex Medical showing a cold device with cold pad and Donjoy wrap, Knee ROM brace (L1833) was delivered. No pricing is listed. Bracing product not noted on secondary sheet in packet. (See Ex. 22)

b. Same/similar check confirms product L1833 was billed to insurance 8/8/23. (See Ex. 23)

**Patient 9**

209. Kinex provided a knee brace orthotic for Patient 9 following surgery in 2022.

210. Kinex billed Medicare for this DME device.

211.   The physician believed that he ordered an ice machine to assist the patient in reducing post-operative pain and swelling but his order set also has the post op brace L1833 code listed.

212.   Kinex instructed Patient 9 on using only the ice machine and circulating wrap.

213.   Kinex told Patient 9 that the brace component of the DME device was not necessary for the ice machine to function.

214.   Patient 9 was never given any instruction on using the brace, but was shown how to use the ice machine without the knee brace hinges.

215.   The hinges are the portion of the brace that qualify it as a covered DME device. The hinges are easily removable.

216.   Patient 9 was instructed to leave the hinges in the original packaging.

217.   The ice machine with circulating wrap was brought to the surgery and applied immediately post operation.

218.   Therefore, the knee brace orthotic was not medically necessary and should not have been billed to insurance. Kinex knew this.

219.   Therefore, Kinex defrauded Medicare.

220.   Then, Patient 9 underwent another procedure within two years of the 2022 procedure. Kinex's fraud prevented Patient 9 from having the knee brace orthotic covered by Medicare for this second procedure because it was denied as same or similar within a prohibited time frame.

221.   The following are approximate figures of the relevant costs based on Defendant's fraud:

   a.   Medicare cost on knee brace orthotic: $810.46

35

b.      Coinsurance to patient for knee brace orthotic: $162.09.

c.      Medicare cost for the Cold Therapy unit with circulating wrap that the MD thought they ordered: $0 (a non-reimbursable item) Patient had to pay towards the cost of the cold therapy device.

d.      HCPCS Billing code for knee brace orthotic L1833/Billing code for the cold therapy device E0218

e.      For picture, see Image 2.

  i.      Knee brace that was provided and billed to insurance along with non-covered ice machine// versus comparable ice machine with circulating wrap that MD felt was necessary for assisting with reducing postsurgical pain and swelling.

222.    Relator collected the following evidence of Defendant's fraud relating to Patient 9:

a.      Same or similar verification with Medicare that L1833 was billed on 9/28/22. (See Ex. 24)

**Patient 10**

223.    Similar to previous patients identified in the Complaint, Kinex provided a knee brace orthotic for Patient 10 following surgery in July 2021.

224.    Kinex billed Medicare for this DME device.

225.    Kinex instructed Patient 10 on how to use only the ice machine and wrap.

226.    Kinex told Patient 10 that the brace component of the DME device was not necessary for the ice machine to function.

227.    Patient 10 was never given any instruction on using the orthotic brace, but was shown how to use the ice machine without the knee brace hinges.

228. The hinges are the portion of the brace that qualify it as a covered DME device. The hinges are easily removable.

229. Patient 10 was instructed to leave the hinges in the original packaging.

230. The ice machine with circulating wrap was brought to the surgery and applied immediately post operation.

231. Therefore, the knee brace orthotic was not medically necessary and should not have been billed to insurance. Kinex knew this.

232. Therefore, Kinex defrauded Medicare.

233. The following are approximate figures of the relevant costs based on Defendant's fraud:

    a.    Medicare cost on knee brace orthotic: $810.46

    b.    Coinsurance to patient for knee brace orthotic: $162.09.

    c.    Medicare cost for the Cold Therapy unit with circulating wrap that the MD thought they ordered: $0 (a non-reimbursable item) Patient had to pay $200 towards the cost of the cold therapy device and coinsurance of other products billed to insurance.

    d.    HCPCS Billing code for knee brace orthotic L1833/Billing code for the cold therapy device E0218

    e.    For picture, see Image 2.

        i.    Knee brace that was provided and billed to insurance along with non-covered ice machine// versus comparable ice machine with circulating wrap that MD felt was necessary for assisting with reducing postsurgical pain and swelling.

234. Relator collected the following evidence of Defendant's fraud relating to Patient 10:

    a. Delivery ticket from Kinex Medical showing a cold device with cold pad and Donjoy wrap, knee ROM brace (L1833) was delivered. No pricing is listed. (See Ex. 25)

    b. Advance Beneficiary notice from Kinex outlining costs. No mention of the bracing orthotic. (See Ex. 26)

    c. Patient Care Plan with no mention of bracing orthotic use. Instructions for cold therapy use, however. (See Ex. 27)

**Patient 11**

235. Kinex provided a knee brace orthotic for Patient 11 following surgery in 2019.

236. A knee brace in the category of this billing code is traditionally used following a variety of knee repairs to add stability and control range of motion for appropriate healing following the procedure.

237. Kinex billed Patient 11's federal insurance for this knee brace orthotic.

238. This billing by Kinex was fraudulent.

239. The physician did not order the knee brace orthotic. The physician ordered a cold device purchase. (See Ex. 28)

240. Kinex ordered the covered DME device as a means to upcharge the federal insurer.

241. There is nothing related to the L1833 ROM Brace on the MD order.

242. Kinex instructed Patient 11 on using the ice machine only and informed Patient 11 that the brace component was not needed for the ice machine to function.

243.     Therefore, the knee brace orthotic was not medically necessary and should not have been billed to insurance.

244.     The following are approximate figures of the relevant costs based on Defendant's fraud:

    a.     BCBS Federal was billed for the knee brace orthotic: $800.48. The Plan allowed $453.88

    b.     Coinsurance to patient for knee brace orthotic: $136.16

    c.     Cost for the Cold Therapy unit with circulating wrap that the MD thought they ordered to the employee plan: $0 (a non-reimbursable item) Patient had to pay $150.00 towards the cost of the cold therapy device.

    d.     HCPCS Billing code for knee brace orthotic L1833/Billing code for the cold therapy device E2018

    e.     For picture, see Image 2.

        i.     Knee brace that was provided and billed to insurance along with non-covered ice machine// versus comparable ice machine with circulating wrap that MD felt was necessary for assisting with reducing postsurgical pain and swelling.

245.     Relator collected the following evidence of Defendant's fraud relating to Patient 11:

    a.     Certificate of medical Necessity from the physician for the cold device. No mention of a ROM knee brace. (See Ex. 28)

b. Delivery ticket from Kinex Medical showing a cold device with cold pad and Donjoy wrap, Knee ROM Brace (L1833) was delivered. No pricing is listed. (See Ex. 29)

c. Explanation of benefits from Federal insurance plan explaining payment for the L1833 knee brace but denial of cold therapy device. (See Ex. 30)

**Patient 12**

246. Kinex provided a knee brace orthotic for Patient 12 following surgery in September 2023.

247. Similar to other patients identified in the Complaint, Kinex instructed Patient 12 not to use the orthotic qualifying the device as a covered DME device.

248. Instead, Kinex only instructed Patient 12 on how to use the ice machine device.

249. Therefore, the range of motion orthotic brace was not medically necessary.

250. Kinex only billed for that device to increase the sale amount.

251. The following are approximate figures of the relevant costs based on Defendant's fraud:

a. Insurance cost on knee brace stabilization orthotic: $810.46

b. Insurance cost for the Cold/compression Therapy unit with circulating wrap that MD thought they ordered: $0 as a non-covered item. Patient billed $150 for cost of non-covered item.

c. HCPCS Billing code for knee brace orthotic L1833/Billing code for the cold therapy device E0236

d. For picture, see Image 6.

i. ROM (Range of Motion) brace that was provided and billed to insurance along with non-covered Cold/Compression device // versus Cold compression device with circulating wrap that MD felt was necessary for assisting with reducing posts surgical pain and swelling. *Note the ROM Brace is not shown nor required for use on this unit.

252. Relator collected the following evidence of Defendant's fraud relating to Patient 12:

a. Certificate of medical necessity (CMN) from surgeon for cold/compression device rental and "Stabilization orthotic" billed under L1833 code. There was no pricing on this CMN and that allowed Defendant to perpetrate the fraud on Medicare. (See Ex. 31)

**Patient 13**

253. Kinex provided a knee brace orthotic for Patient 13 following surgery in 2019.

254. Similar to other patients identified in the Complaint, Kinex instructed Patient 13 not to use the orthotic qualifying the device as a covered DME device.

255. Instead, Kinex only instructed Patient 13 on how to use the ice machine device.

256. Therefore, the range of motion orthotic brace was not medically necessary.

257. Kinex only billed for that device to increase the sale amount.

258. The following are approximate figures of the relevant costs based on Defendant's fraud:

a. Insurance Cost on knee brace orthotic: $810.46

b. Coinsurance to patient for knee brace orthotic: $162.09

c.   Cost for the Cold Therapy unit with circulating wrap that the MD thought they ordered: $0 (a non-reimbursable item) Patient had to pay $200.00 towards the cost of the cold therapy device and coinsurance of other products billed to insurance.

d.   HCPCS Billing code for knee brace orthotic L1833/Billing code for the cold therapy device E0218

e.   For picture, see Image 2.

i.   Knee brace that was provided and billed to insurance along with non-covered ice machine// versus comparable ice machine with circulating wrap that MD felt was necessary for assisting with reducing postsurgical pain and swelling.

259.   Relator collected the following evidence of Defendant's fraud relating to Patient 13:

a.   Delivery ticket from Kinex Medical showing a cold device with cold pad and Donjoy wrap, Knee ROM brace was delivered. No pricing is listed. (See Ex. 32)

**Patient 14**

260.   Kinex provided a knee brace for Patient 14 following surgery in 2018.

261.   Similar to other patients identified in the Complaint, Kinex instructed Patient 14 not to use the orthotic qualifying the device as a covered DME device.

262.   Instead, Kinex only instructed Patient 14 on how to use the ice machine device.

263.   Therefore, the range of motion orthotic brace was not medically necessary.

264.   Kinex only billed for that device to increase the sale amount.

42

265.    The following are approximate figures of the relevant costs based on Defendant's fraud:

    a.    Insurance cost on knee brace stabilization orthotic: $810.46

    b.    Insurance cost for the Cold/compression Therapy unit with circulating wrap that MD thought they ordered: $0 as a non-covered item. Patient billed $150 for cost of non-covered item.

    c.    HCPCS Billing code for knee brace orthotic L1833/Billing code for the cold therapy device E0236

    d.    For picture, see Image 6.

        i.    ROM (Range of Motion) brace that was provided and billed to insurance along with non-covered Cold/Compression device // versus Cold compression device with circulating wrap that MD felt was necessary for assisting with reducing posts surgical pain and swelling. *Note the ROM Brace is not shown nor required for use on this unit.

266.    Relator collected the following evidence of Defendant's fraud relating to Patient 14:

    a.    Delivery ticket from Kinex Medical showing a cold/compression device with cold-heat pad, IPC Therapy, and DJO Knee ROM brace was delivered. No pricing is listed. (See Ex. 33)

**Patient 15**

267.    Kinex provided a knee brace orthotic for Patient 15 following surgery in 2021.

268.    Similar to other patients identified in the Complaint, Kinex instructed Patient 1 not to use the orthotic qualifying the device as a covered DME device.

269.    In fact, Kinex instructed Patient 15 to leave the brace component in the original packaging.

270.    Kinex only instructed Patient 15 on how to use the ice machine device.

271.    Therefore, the range of motion orthotic brace was not medically necessary.

272.    Kinex only billed for that device to increase the sale amount.

273.    Kinex defrauded Medicare.

274.    The following are approximate figures of the relevant costs based on Defendant's fraud:

    a.    Medicare's Cost on knee brace orthotic: $810.46

    b.    Coinsurance to patient for knee brace orthotic: $162.09

    c.    Cost for the Cold Therapy unit with circulating wrap that the MD thought they ordered: $0 (a non-reimbursable item) Patient had to pay $250.00 towards the cost of the cold therapy device and coinsurance of other products billed to insurance.

    d.    HCPCS Billing code for knee brace orthotic L1833/Billing code for the cold therapy device E0218

    e.    For picture, see Image 2.

        i.    Knee brace that was provided and billed to insurance along with non-covered ice machine// versus comparable ice machine with circulating wrap that MD felt was necessary for assisting with reducing postsurgical pain and swelling.

44

275. Relator collected the following evidence of Defendant's fraud relating to Patient 15:

    a.    Delivery ticket from Kinex Medical showing a cold device with cold pad and Donjoy wrap, Knee ROM brace was delivered. No pricing is listed. (See Ex. 34)

    b.    Advanced Beneficiary Notice of Noncoverage for the cold therapy and DVT devices. (See Ex. 35)

**Patient 16**

276. Kinex provided a knee brace orthotic for Patient 16 following surgery in 2017.

277. Similar to other patients identified in the Complaint, Kinex instructed Patient 19 not to use the orthotic qualifying the device as a covered DME device.

278. In fact, Kinex instructed Patient 16 to leave the brace component in the original packaging.

279. Kinex only instructed Patient 16 on how to use the ice machine device.

280. Therefore, the range of motion orthotic brace was not medically necessary.

281. Kinex only billed for that device to increase the sale amount.

282. The following are approximate figures of the relevant costs based on Defendant's fraud:

    a.    Insurance Cost on knee brace orthotic: $810.46

    b.    Coinsurance to patient for knee brace orthotic: $162.09

    c.    Cost for the Cold Therapy unit with circulating wrap that the MD thought they ordered: $0 (a non-reimbursable item) Patient had to pay $200.00

towards the cost of the cold therapy device and coinsurance of other products billed to insurance.

    d.    HCPCS Billing code for knee brace orthotic L1833/Billing code for the cold therapy device E0218

    e.    For picture, see Image 2.

        i.    Knee brace that was provided and billed to insurance along with non-covered ice machine// versus comparable ice machine with circulating wrap that MD felt was necessary for assisting with reducing postsurgical pain and swelling.

283.    Relator collected the following evidence of Defendant's fraud relating to Patient 16:

    a.    Delivery ticket from Kinex Medical showing a cold device with cold pad and Donjoy wrap, Knee ROM brace was delivered. No pricing is listed. (See Ex. 36)

    b.    Actual photos of ROM knee brace hinges that were never used and left in original packaging. (See Ex. 37)

**Patient 17**

284.    Kinex provided a knee brace orthotic for Patient 17 following surgery in May 2024.

285.    The physician did not order the range of motion orthotic. (See Ex. 38)

286.    Kinex added that DME device to increase the sale amount and to have Medicare pay for the device. (See Ex. 39).

287.    Similar to other patients identified in the Complaint, Kinex instructed Patient 17 not to use the orthotic qualifying the device as a covered DME device.

288. In fact, Kinex instructed Patient 17 to leave the brace component in the original packaging.

289. Kinex only instructed Patient 17 on how to use the ice machine device.

290. Therefore, the range of motion orthotic brace was not medically necessary.

291. Kinex defrauded Medicare.

292. The following are approximate figures of the relevant costs based on Defendant's fraud:

   a.  Medicare cost on knee brace stabilization orthotic: $810.46

   b.  Medicare cost for the Cold/compression Therapy unit with circulating wrap that MD thought they ordered: $0 (as a non-covered item). Patient was approved for a hardship for the cost of the cold/compression device.

   c.  HCPCS Billing code for knee brace orthotic L1833/Billing code for the cold therapy device E0236

   d.  For picture, see Image 6.

      i.  ROM (Range of Motion) brace that was provided and billed to insurance along with non-covered Cold/Compression device // versus Cold compression device with circulating wrap that MD felt was necessary for assisting with reducing posts surgical pain and swelling. *Note the ROM Brace is not shown nor required for use on this unit.

293. Relator collected the following evidence of Defendant's fraud relating to Patient 17:

a. Original Certificate of Medical Necessity (CMN) from the physician without a ROM Brace included. No prices listed. (See Ex. 38)

b. Delivery ticket from Kinex Medical showing a cold/compression device with cold-heat pad and Cryoknee brace (Knee ROM Brace) was delivered. No pricing is listed. No mention of brace on care plan. (See Ex. 39)

c. Advanced Beneficiary Notice explaining the cold unit alone was not a covered benefit. (See Ex 40)

d. Photos of delivered and unused Cyro Knee ROM Brace. (See Ex. 41)

**Patient 18**

294. Kinex provided a knee brace orthotic for Patient 18 following surgery in July 2024.

295. Similar to other patients identified in the Complaint, Kinex instructed Patient 18 not to use the orthotic brace qualifying the device as a covered DME device.

296. In fact, Kinex instructed Patient 18 to leave the component in the original packaging.

297. Kinex only instructed Patient 18 on how to use the ice machine device.

298. Therefore, the range of motion orthotic brace was not medically necessary.

299. Kinex only billed for that device to increase the sale amount.

300. The following are approximate figures of the relevant costs based on Defendant's fraud:

a. Insurance Cost on knee brace orthotic: $810.46

b. Coinsurance to patient for knee brace orthotic: $162.09

c. Cost for the Cold Therapy device with circulating wrap that the MD thought they ordered: $0 (a non-reimbursable item) Patient had to pay $150.00

48

towards the cost of the cold therapy device and coinsurance of other products billed to insurance.

d.    HCPCS Billing code for knee brace orthotic L1833/Billing code for the cold therapy device E0218

e.    For picture, see Image 2.

i.    Knee brace that was provided and billed to insurance along with non-covered ice machine// versus comparable ice machine with circulating wrap that MD felt was necessary for assisting with reducing postsurgical pain and swelling.

301.    Relator collected the following evidence of Defendant's fraud relating to Patient 18:

a.    Delivery ticket from Kinex Medical showing a cold device with cold pad and CryoKnee brace was delivered. No pricing is listed. (See Ex. 42)

b.    Advanced Beneficiary Notice explaining the cold therapy unit along was not a covered benefit. (See Ex. 43)

**Patient 19**

302.    Kinex provided a knee brace orthotic for Patient 19 following surgery in February 2023.

303.    Similar to other patients identified in the Complaint, Kinex instructed Patient 19 not to use the orthotic brace qualifying the device as a covered DME device.

304.    Kinex only instructed Patient 19 on how to use the ice machine device.

305.    Kinex instructed Patient 19 to bring the ice machine with circulating wrap to surgery.

49

306. The wrap and ice machine were applied immediately post-operation in the recovery room.

307. The hinges that qualify the device as a covered DME device were left at home in the original packaging.

308. Therefore, the range of motion orthotic brace was not medically necessary.

309. Kinex only billed for that device to increase the sale amount.

310. The following are approximate figures of the relevant costs based on Defendant's fraud:

    a.    Insurance cost on knee brace orthotic: $810.46

    b.    Coinsurance to patient for knee brace orthotic: $162.09

    c.    Cost for the Cold Therapy unit with circulating wrap that MD thought they ordered: $0 (as a non-covered item). Patient had to pay $200 towards the cost of the cold therapy device and coinsurance of other products billed to insurance.

    d.    HCPCS Billing code for knee brace orthotic L1833/Billing code for the cold therapy device E0236

    e.    For picture, see Image 2.

        i.    ROM (Range of Motion) brace that was provided and billed to insurance along with non-covered Cold/Compression device // versus Cold compression device with circulating wrap that MD felt was necessary for assisting with reducing posts surgical pain and swelling. *Note the ROM Brace is not shown nor required for use on this unit.

311.    Relator collected the following evidence of Defendant's fraud relating to Patient 19:

      a.    Delivery ticket from Kinex Medical showing a cold device with cold pad and Donjoy wrap, knee ROM brace was delivered. No pricing is listed. (See Ex. 44)

## FALSE CLAIMS ACT VIOLATIONS

312.    Defendant, by actions described above, knowingly submitted or caused to be submitted false claims for payment to Medicare, in violation of 31 U.S.C. § 3729(a).

313.    As a direct result of these false claims, the United States Government has suffered substantial financial losses.

314.    The exact amount of damages will be proven at trial, but is believed to be in the millions of dollars.

315.    Relator, pursuant to 31 U.S.C. § 3730(b), has provided all evidence at his disposal to the Government prior to filing this complaint, fulfilling all conditions precedent to bringing this suit.

## PRAYER FOR RELIEF

Relator respectfully requests that this Court:

a. Enter judgment against Defendant for three times the amount of damages the Government has sustained because of Defendant's actions.

b. Award statutory penalties as allowed under the False Claims Act for each false claim submitted by Defendant.

c. Grant such other relief as the Court deems just and proper.

51

Dated this 13th day of November, 2024.

HANSEN REYNOLDS LLC

*s/ John P. Shanahan*
John P. Shanahan, SBN 1088868
Email: jshanahan@hansenreynolds.com
Timothy M. Hansen, SBN 1044430
Email: thansen@hansenreynolds.com
Thomas Janczewski, SBN 1066346
Email: tjanczewski@hansenreynolds.com
301 North Broadway, Suite 400
Milwaukee, Wisconsin 53202
Phone: (414) 455-7676
Fax: (414) 273-8476

*Attorneys for Plaintiff United States of America ex rel. Jesse Geboy*